Appellate Ready to Proceed Mr. Sheffield Thank you, Your Honor. May it please the Court. Your Honors, in Texas, the mean high tide line is the public beach boundary. But when storms destroyed the vegetation in Surfside Beach, the Commissioner ordered a substitute temporary public beach boundary set at a line located 200 feet inland of the low tide line, covering property that is much farther landward than the lawful public beach in Texas. This action authorized a public beach easement on the plaintiff's property and devalued their property, which constitutes irreparable harm because the Commissioner of Sovereign Immunity bars an adequate remedy for that devaluation. The District Court, of course, focused on the irreparable harm issue in this case, but did not address our primary argument, which I just mentioned, that sovereign immunity bars damages in this case, therefore bars an adequate monetary remedy, and therefore the loss of value and other property impacts is irreparable harm in this particular circumstances of this case. So what we're asking this Court to do is to reverse the District Court, remand it to the District Court to fashion an appropriate preliminary injunction given the current status of this case, and we will go from there as far as litigating beyond preliminary injunction for a permanent injunction. There are several issues that have been brought up that I'd like to quickly address about the merits. You want to go to the merits first. I know we've heard a lot about mootness today, but not in your case. So let's hear about it in your case. Let's hear about mootness? Yes. Didn't the Commissioner rescind the order? The Commissioner did rescind the order, Your Honor. But this isn't moot because? Because it's likely to occur. They have not shown that it's absolutely clear that it will not reoccur. They haven't said that we're not going to do it again, and they can't say they won't do it again because the Commissioner has discretion under the statute to do this. So they can't bind the next Commissioner, so they can't come here and say, we won't do it again like sometimes government do. They haven't even said that. What's the evidence that it's likely to happen again? The evidence that it already happened. The vegetation, the order already happened. They've done it once based on the loss of vegetation along the beach because of a storm. So it can happen tomorrow. They can change their mind. Because the Commissioner has discretion under Section 61.071 of the Open Beaches Act to issue an order like this if he determines that one is needed. That's what happened. Then they rescinded it after we briefed the case, and now they can do it again. So the standard as the court in West Virginia versus EPA said. So your answer to what's the evidence that it's likely they could do it again is that he could do it again. Well, let me rephrase that. It's their burden. The mootness is their burden. So the question with respect is not whether I have to show that it won't happen. It's whether they have to show that it won't happen. They haven't done that, and they can't do that because of the fact that they continue to have the ongoing discretion to tomorrow issue an order saying, you know what, the vegetation's gone again. We can't find this beach grass, and so therefore 200 feet landward. They have to show that it's absolutely clear that the challenge conduct will not recur. Exactly. That's how I read the Supreme Court's. Exactly, and they can't even get close to that because they said they haven't even said we won't do it again. They haven't even disavowed the policy. They haven't even gotten close to the absolutely clear standard, which is why the panel held that this case is not moot. So it's not moot, and we're here, therefore, on the district court's opinion, which dealt with irreparable harm primarily. So what's the PI? There's still sort of a ticklish issue, which is you want a PI on something that's not happening. Is the idea essentially a PI against them restoring this policy or a policy like it? Is that sort of their request? If we went to the district court, I would have him fashion the preliminary injunction, and one way that you can do that, one way he could do that is to enjoin the application of this statute, which is what this order is essentially. It's an application of a statute, enjoin the application of the statute to impose a public beach to the 200-foot line without due process, without just compensation, without proof of an easement. That's one he could do. If you admit there's nothing to enjoin right now in the sense of what they're doing right now, but your point is you want to enjoin them from redoing what they used to do. Is that the idea? No, not quite exactly. The harm is ongoing right now, the loss of value. That's continuing on. There's a continuing on. I understand, but that's not based on a pending government action. They have rescinded the order, right? In other words, this is arguably different from our earlier argument where there's a debate about this. I think here the order is totally gone. The order is rescinded. Your point, as I understand it, is please issue an injunction to make sure that order never comes back, or an order like it never comes back. I understand your thought process. Our argument is we lost value in this property. The market value has been chilled. New owners are going to be afraid the government is going to do this again in the future. It's been repressed. But we can't get monetary harm for that. We can't get monetary damage to that. So there's no remedy other than a preliminary injunction or other than an injunction. But that's what I'm asking. And so is this one of those instances where you don't have to show that the market's been chilled? They've got to show that it hasn't. Because it sounds like everything I'm raising you're going to tell me the burden is on the commissioner. You don't have to do anything. So all you've got to do is say the value has gone down, and then the government has to prove that it hasn't. I don't mean that at all. It's their burden. As far as the value, if you look at the record on page 7. That's the irreparable harm. I'm sorry. Maybe I'm confusing. At this point in time. On irreparable harm, what do you have to show? The value, lost value of the property is irreparable harm in this case, because the commissioner enjoys sovereign immunity from damages. So we can't recover that lost value. So that creates irreparable harm. I guess my question is, how are you demonstrating that you've lost value? At record on appeal, page 72, paragraph 55, the testimony of the beach property owners, and they've been in this business for two decades, is that this harms the value of their marketability of their property. The fact that, let me just. That's their professional opinion? Is that what you're telling me? That's your evidence? Yes. All right. Yes. And let me just point out, maybe it didn't come as crossing the breeze as much as it should have. This is the very first time this statute has been applied this way. So the market hasn't built in the fact that now you own property, and if your vegetation is gone, you could suddenly be a public beach, because this has never been applied. This is the first time. So now, my clients, their property is subject to this reality that was only a possibility that never happened before. Now they've got to give notice. Now it's in the records. The buyers can find out what happened. So everybody knows, hey, if the vegetation blows away with the next hurricane, our property that we may want to buy is going to be on a public beach easement. So that's where the harm to the marketability and value, part of where it comes in, is the reality of how this is being applied in Texas the first time and recorded in the records. So even though it's gone, there's still this harm to these properties of marketability and value, because this is the first time it's happened, and now this is a reality that has to be built into the market. Pardon my forgetting. We haven't even reached the merits in this case, right? This is purely the district court denied PI on irreparable injury grounds. So whether you can show success on the merits, you're not trying to prove the merits now. You're saying you should be allowed to do that for the first time in district court. We're arguing the merits here as well now for this reason. It's true the district court did not address that. However, if you don't address that, this is what's likely to occur. Let's assume that we show irreparable harm because of the unique situation, the sovereign immunity loss of value. What's going to happen is we're going to go back, and we're going to argue the merits on the same record, the same evidence, and it's going to be back here likely in a year, year and a half on the same merits issue that we just briefed. You prefer that we deal with the merits now even though, in fairness, the district court hasn't weighed in on the merits yet. I think it serves the judicial economy to do that. I think it's the proper course, and it was briefed. Both the parties have briefed all the merits, so I think that's the proper course to take if you find irreparable harm, which I think you should again because of the loss of value. I'll reserve the remainder of my time for rebuttal. Mr. Abrams? Yes. You may proceed. Thank you, Your Honor. Good afternoon. May it please the Court. Michael Abrams for the appellees. The district court's judgment was not an abuse of discretion because plaintiffs did not prove irreparable harm. And today it is even harder for the plaintiffs to show irreparable harm because the Commissioner's temporary order has been rescinded, which makes this case moot. And on the merits, the temporary order did not affect an easement. The Commissioner is responsible for protecting the public beach under Texas law, but she has no authority to expand it, and the Commissioner's order did not do so. I do want to address mootness because I think that's the threshold jurisdictional issue here, but I also want to focus quickly on what this order was designed to do and what it did do. So under Section 61023 of the Natural Resources Code, no order under that chapter can affect title to land, and this order did not claim to do that. What this order was trying to do is after a storm, there were two storms in the fall of 2020, folks need to go out and submit repairs to their local or permit requests to their local governments. Local governments approve those so they can rebuild their homes. One of the things that they have to do when they're submitting those applications is note what the line of vegetation is. When there's no vegetation, they can't do that, and so they might have to hire a surveyor who would go out and confirm that there's no vegetation. Local governments could be a little bit in the lark of what's going on. And so what this order was trying to do and what the legislature designed in 2013 when it passed the statute, is it said, okay, so when there's a situation like this, we're going to assume a legal fiction that the temporary line of vegetation is 200 feet from mean low tide, and that's just a regulatory measure that allows folks to start rebuilding their homes faster. So I think that the plaintiffs have portrayed this as a, you know, Your point is you weren't trying to encroach, you were trying to be helpful to facilitate the rebuilding process. That's exactly right. Fair enough. But again, this is why I sort of hesitate to go to the merits because we haven't gone to the merits yet. But to go to the merits, the other side is saying even if we accept that that was a well-intentioned policy, the ramifications for them is a serious intrusion on their property rights. I think that what the plaintiffs are referring to is the language in the temporary order that refers to the public beach. And I agree, Your Honor, we haven't gotten to the merits yet, and so these are arguments that really are best left for the district court if, you know, we go back and resolve that. But the temporary order's reference to public beach has to be read both in context of the order itself and its findings, which said that it was necessary to establish a temporary line of vegetation, but also with the terms in the Natural Resources Code itself, one of which is Section 61018, which defines a public beach, and that basically says along with provisions of the Texas Constitution, the public beach in Texas is the wet beach, which is the line from mean low tide to mean high tide. The state owns that land. And then from mean high tide to the line of vegetation, that's a dry beach that generally is not owned by the public. It's privately owned. But there could be the potential for a public right of access there. And all the order was trying to say is we're not replacing that general framework. And I think that this was, as my friend on the other side noted, this was the first time in 10 years that the commissioner has issued an order under Section 610171. So in issuing the order and in issuing the frequently asked questions, I think what the commissioner was trying to do was just be helpful. It's a complicated regulatory scheme. It involves the Dune Protection Act in Chapter 63 of the Natural Resources Code, the Open Beaches Act in Chapter 61, the Villages Protection Plan, which is in the record. And we were just trying to synthesize that and just try to explain here's what's happening. Another thing we were trying to do under Section 61.0185 is say, look, even if your home happens to now be on the wet beach, we're not going to do any enforcement actions or refer things to the attorney general to try to take action and remove those homes from the beach. So this order was sort of a two-step belt and suspenders approach. One, let's try to make it easy for folks to submit repairs. And, two, to the extent you're worried that we're going to take some enforcement action, we're not going to do that. And so, frankly, this is an order that the commissioner I don't think expected to be in federal court thinking that this would be a substantive due process violation of taking. And I think that might be a reflection of this is just the first time that the statute has been applied here. But in our view and if you look at the record. Look, what you're saying is this was all well-intentioned. There was no attempt to take people's property. And the order didn't do so. Okay. But the other side is saying that they believe that whatever your intentions may have been, the practical ramifications here are that they do, in fact, have a major intrusion of their property and, B, a chilling effect. I think for purposes of understanding the procedural rules that govern these disputes, we have to assume the worst for them and to say, therefore, are we going to have a system for relief or is it going to be an irreparable injury? Or is it going to be not an irreparable injury and, therefore, they don't get to have this kind of relief? Well, I think that it's true that for purposes of a motion to dismiss, which the district court denied, you have to take their allegations as true. And the district court did that and faithfully applied the 12B standard. But I think it's a very different question for the question of preliminary injunction where they have the burden on all four factors, including that they have. They were dumped on purely irreparable injury. That's right. And they have the burden of showing a likelihood of irreparable injury. And actually there I want to talk about two specific findings that the district court make that negate the idea that there was an irreparable injury here. The first was that GLO, the general land office, represented, and these findings are at 1351 of the record, the general land office represented that the office does not prohibit no trespassing or private property signs on these homes. And, in fact, if you look at one of the properties, which is called the Sargasso Lane property, there are still no trespassing signs up, even though those properties are seaward of the temporary line of vegetation. So if we were really taking the position that you can't exclude the public, we would have said you've got to take down those signs, but we didn't do that. And the declaration of Natalie Bell, which starts at 445 of the record, also says to the extent they're concerned about excluding members of the public, we've also said no one has represented from the GLO that you can't do that. And so those are the facts that are in the record when the plaintiffs are trying to show that this was an irreparable injury. And the evidence that the district court considered and credited is that there is no harm to their privacy interests because no one is telling them they can't exclude people. And I'd also note the district court noted that these are commercial rental properties. And so there would have had to have been some sort of finding. Are you saying there's no irreparable injury as a legal matter because these types of injuries are never irreparable? Or just on the facts of this case? Because I thought we were here on this whole sovereign immunity issue. I would say on the facts of this case, I don't think that they can show irreparable injury. I think the plaintiffs, one of the questions sort of underlying this case is can an intrusion on privacy interests constitute irreparable harm? And I don't think that the court needs to reach that because I think the court can say, even assuming that that can be irreparable harm, the plaintiffs didn't show that here. And as far as the — Am I misremembering? I thought the whole district court opinion was about, you know, is this a First Amendment case or is this more like a Piggings case? I mean, that's a legal reason. That's not, you know, you actually didn't get any — the government's policy didn't actually affect your property. I think that was one aspect. I feel like there are two different — completely different views here. That was one aspect of the district court's reasoning. I think the district court — You're saying it did both? Yes, it did both. The district court said as an initial matter, a constitutional violation of this nature in and of itself is not irreparable injury. And then it looked at the specific facts and said that there was not irreparable injury based on what — the evidence that the plaintiffs put on. Is there language in the opinion you would refer me to or — I'm saying a lot of the constitutional stuff, not the fact-based stuff. Sure. I would refer to — I'd look at page 43 of that opinion. And that's where the district court talked about partial deprivations not being sufficient to establish irreparable injury. And that's where the district court — You're saying, moreover, the commission has represented. Right. Exactly. They represented that we have not prevented anyone from posting their trespass signs. And then the other point that they make is that, well, we won't be able to do certain repairs. And the evidence that the general land office submitted was that they haven't submitted any repairs. And those repairs are going to be evaluated on a case-by-case basis. And so that was the other basis. So all I'm seeing in this language that you're referring to — helpful for you to refer to, so I appreciate it. But this is just saying that the commissioner has made this representation. Right. Well, I think that that's a credit to — that's crediting the evidence that the commissioner put on and noting that there was no contrary evidence that the plaintiffs put on. I mean, the plaintiffs speculated that they would not be able to exclude people from their property, and they said that they were concerned about that. But they didn't have evidence of a single person who came onto their property and waved around the order and said it's because of this order that now I have a right to access it here. Are you saying this issue wasn't disputed in district court? I'm not — what issue? This representation, the language that you're referring to. All I'm seeing is, moreover, the commissioner has made this representation. Okay. I think it's undisputed that we made that representation and that that is the commissioner's position. There was no intent to prohibit — All right, but whether that's true. That is true, yes. All right, well, I'll ask opposing counsel. That representation is true insofar as that was the declaration under penalty of perjury that Natalie Bell submitted, that the general land office has not prohibited anyone from entering the property. So I also want to note an interesting procedural aspect here, that irreparable harm is not a decision on the merits. And so in the Sinecom case that we cited in our 20A-J, the Court noted that there are multiple avenues to deny an audience on the merits. So I think that the Court probably — one of the simplest ways if the Court doesn't want to reach mootness is just to say that the district court didn't abuse its discretion in finding a lack of irreparable harm. I don't think the Court necessarily needs to reach mootness, but if the Court does decide to reach mootness, I just want to note several aspects of this case that differ from the case the Court heard earlier this afternoon. So one aspect of that is that in this case, unlike the case that you heard this afternoon, earlier this afternoon, the district court denied a preliminary injunction. And so this case falls under the fact pattern of Sosamon, where, again, the Court said maybe we'd look with a more jaundiced eye if you were trying to vacate a judgment. But here there's no evidence that we're trying to vacate a judgment. It was the fact that we rescinded it was for the reason that it no longer fulfilled its purpose. So if you recall, I was saying that the reason that this order was issued is that we don't know what the line of vegetation is. People need to know what that is when they're submitting their applications. Well, in the findings in the rescission order, which is Exhibit A to our motion to dismiss, the commissioner noted that two growing seasons have allowed the vegetation to regrow. And so there's no reason for someone to submit an application with an imaginary line of what the line of vegetation is when they can look on their properties and figure out what it is. This is also different because this order was rescinded in August of 2022. It's been five months. There is no intention of reinstituting this particular order. It was a response to a particular set of natural disasters that had a unique effect of obliterating the line of vegetation, and there's no reason that the commissioner would ever institute this particular order at any point in the future. But what about the next storm? So to that point, Your Honor, it's true. I can't sit here and disclaim that the commissioner would never exercise his authority under Section 610171. But this case was litigated as a challenge to the order itself, not to the statute. The motion for preliminary injunction that we're up here on asked the district court to enjoin the order, not to enjoin the statute. And so I think if there's a challenge to the statute, that's a different case. This case is about the order itself, and it is absolutely clear that this particular order will not be reinstituted. The other interesting thing about the fact that this statute was just enacted, or this statute was first used for the first time in 10 years, is that it might be easy to say, oh, the next storm will happen, and, of course, it'll obliterate the line of vegetation. But I'm from Texas. We have a lot of storms. I'm very familiar with them. But this was the first time that the commissioner found it actually necessary to issue an order under Section 610171. So we don't know for certain that there will be a storm in 5 years, 10 years, that will obliterate the line and necessitate this order. Not only that, we don't know where the storm will hit. We don't know what language the commissioner will use. So I think this is just a different set of facts than what you heard earlier, where the order has been rescinded. There's no risk that it will be reinstituted, and it's true that there is the possibility that there could be another order. But just like in Amalia v. Paxton, which we cite in our 28J, the fact that there could be a reinstitution or a different policy at some future date isn't sufficient to prevent mootness. Did I hear you clearly that this case is different because here the district court denied rather than granted? That's right. So, in other words, it's not a stratagem to avoid an injunction because there is no injunction. That's exactly right. All right. Now, of course, the whole point of appellate review is we might disagree. It just goes to the good faith. Fair enough. I get your point, but I also get the limits of your point. What's your best case for the proposition that we apply a more lenient standard to the defendant when the defendant prevailed in district court rather than lost in district court on the P.I.? I would look to the language in Soseman, which said that you – we might – District court or our court? Oh, sorry. That was this court. You're talking about the Supreme Court's decision? No, no, no, the Fifth Circuit. Fifth Circuit, okay. That said, we might be more inclined to look with a more jaundiced eye if there had been – More likely to be good faith if the government won. Right, and here there's this unique set of facts where it was intended for a particular regulatory purpose. The purpose fulfilled its – the order fulfilled that purpose, and now it's – The government always says it's a legitimate purpose. Right, but here the vegetation had regrown along the shore, and that's what we were looking for. And after that point, there was no need for the order, and so it was rescinded. I do want to address the sovereign immunity point about takings claims. So the Knitt case from the Supreme Court said that – and this was arguably dicta, but it's still pretty powerful dicta – that when you have an avenue of relief to get compensation for a taking, equitable relief is generally not available. And here there's no question that Texas has a robust inverse condemnation proceeding under Article I, Section 17 of the Texas Constitution. So there's no question that if this – if this were an easement, which we disagree with – Does that conflict with – that argument that you're making conflict with the Sixth Circuit's recent decision? That the plaintiff cited in the 2008 – Yeah, the Commonwealth v. Biden. No, I don't think so, Your Honor. That wasn't a takings case, and I think that – There was no state law remediation there. Right. Here there is. We cited a Third Circuit case on page 27 of our brief called Hayansky that addresses this argument, and I think Nick is also a pretty powerful point. One of the interesting quirks of this argument is that if the plaintiffs are right, then local governments can't be enjoined for a taking in federal court because they can – the plaintiff can sue a local government in federal court for a taking. They don't have immunity. The federal government can't be enjoined for a taking because the Tucker Act allows them to sue in state court, in the court of claims. But somehow the state government can be enjoined because of their sovereign immunity, even though there is an adequate state law remedy in state court. I don't think the court needs to reach this issue because I think that the simplest way to solve – to resolve this case is the district court made some simple factual findings about a lack of irreparable harm. That wasn't an abuse of discretion, and the district court's reasons or findings weren't clear error. I just – that's the simplest way to resolve the case, but if the court ventures further, I think we can safely say that takings are not irreparable when there is an adequate state court remedy. If there are no more questions, I'll reserve my time. Thank you, counsel. Rebuttal. Rebuttal. May it please the court. It's a scary thing for Texas property owners when the general land office says, we're here to help you by creating a public easement up to 200 feet inland of a low tide across previously unencumbered private property like our plaintiffs. Let me just clarify exactly what's happening because I think it will help. The mean high tide line is closer to the water. That's where the public beach boundary is in Texas. The vegetation line is not the public beach boundary at Surfside. It's just vegetation. They think it's the boundary line, though. They think it's the boundary line, but it's not under Texas law. The mean high tide line is. So when the vegetation got blown away in Surfside, they created a temporary boundary, public boundary up here at the vegetation line where they thought it was rather than at the mean high tide line where it is. This covered this entire area, excuse the illustration, between my hands, the entire area including private property. The order itself isn't this nice, helpful regulatory program. It says a public easement exists, shall exist to the 200-foot line for the duration of the order. That order, of course, has been rescinded, but it was in effect for approximately nine months, if I have my timing correct. That took the plaintiff's property during that period. That took the value of their property during that period. That value cannot be recovered because of the sovereign immunity of the commissioner. State remedies are irrelevant under NIC because NIC separated federal court and state court remedies when it comes to takings in particular. You don't look at state court remedies at all. There's always some overlapping state remedy for a constitutional violation, always, but you don't look at it as a federal court. You look at whether there's a federal remedy. There's no federal remedy. What's the best case for the proposition that the irreparable injury analysis turns on the availability of federal remedies as opposed to other remedies? I have three cases, four if you include the supplemental authority case, the Biden case. But they say the Biden case didn't deal with, there was no argument of a state law remedy. In other words, presuppose that I get your point about sovereign immunity destroying the ordinarily reparable injury of money damages. Let's presuppose that principle. They say that doesn't matter. We accept that principle, at least arguendo, but there's a state law remedy here, and Biden doesn't speak to that. I understand that argument. In the interest of time, I'll just say this. Nick dealt with that very question about whether state remedies matter. But beyond that, we have. It's an exhaustion issue or something, right? It's not quite the same. Okay. I'll grant you that's, I understand that's one way to look at it. I'm not being resistant. I'm just trying to. No, I understand. I'm just trying to get to a secondary point, which is this. You have due process claims and seizure claims in here, not just takings claims. Not just takings claims. You have an order of public easement issued on this property without notice, without hearing, as an unreasonable seizure. So regardless if you think that takings is kind of fuzzy, maybe we're not sure about that, you still have these separately cognizable, viable. You're saying even if takings could be taken care of with inverse condemnation, that doesn't take care of due process? Doesn't do anything. What was the other claim? Procedurally processed and unreasonable seizure claim under severance, the severance case in this court. So you can't wrap them all up and bundle them up and just say, you know, you could go to state court. Inverse condemnation wouldn't take care of those? Why not? Because inverse condemnation provides you for only the fair market value of whatever it is. In these other claims, you get different types of damages, you get different types of remedies and you can't. Your whole, pardon my ignorance, you're alleging injury or monetary damages separate from deprivation of fair market value or reduction of fair market value? No. But the reason why the value, the value, some value is lost because of easement, some value is lost because of your inability to repair, your inability to, buyers are going to look at this property and say, because of this order, because we're 200 feet within the mean low tide line, we're in this area, we buy this property and the storm, next storm comes, by the way, it's statutory language, they don't have, the commissioner just pastes the statutory language in, but getting back to the point, the buyers will say, if we can't build on this property, we're not, it's not marketable or valuable anymore. So I'm trying to get to your point in a roundabout way quickly, excuse me for speaking fastly, it's not just the easement that devalues the property, it's the fact that you cannot repair in the fact sheet that the commissioner issued with this order said there are limits on what you can repair now if you're in this area subject to the order. You cannot build additional square footage, you cannot build a new room, you cannot use fiber concrete, so there's multiple ways why you can't, and you can't get that in inverse condemnation. That's not just a fair market value harm, that's a what else harm? It's not a fair market value for the easement, for the fair market value for the easement, it's the consequential collateral damage to your other property, because the easement is just part of your property, it's not your entire property. So you have the value of the easement and you have the damage to the rest of the property sitting next to the easement that you can't, or sitting on the easement that you can't build anymore. So, and the case I would refer you to, excuse me, I know my time's up, the case I would refer you to is in the Bowlby case is one case, as far as separating due process damages and takings damage, and in the other case, it's escaping me, I could send a letter, but it's in the brief, it's in the brief, there's separate cognizable actions. Thank you, counsel. Thank you. The court will take this matter under advisement and we are adjourned.